UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:20-cv-80993-WPD

TIMOTHY O'BRYAN

    Plaintiff,

vs.

JOE TAYLOR RESTORATION, INC., a Florida
Corporation, AARON GETTY, individually,
KAREN RADEWICZ, individually, and
GLENDA GALARZA, individually,

    Defendants.
_____/

**DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO RULE 11
AND INCORPORATED MEMORANDUM OF LAW**

Defendants, JOE TAYLOR RESTORATION, INC. ("JTR"), AARON GETTY, individually, KAREN RADEWICZ, individually, and GLENDA GALARZA, individually, (collectively referred to as "Defendants"), hereby file their motion for sanctions pursuant to Fed. R. Civ. P. 11 against Plaintiff, TIMOTHY O'BRYAN ("Plaintiff") and Plaintiff's counsel, Law Offices of Levy & Levy, P.A.  The grounds upon which this motion is based and the substantial matters of law supporting those grounds are described with specificity below.

    1.    On or about June 23, 2020, Plaintiff filed his complaint seeking damages pursuant to the *Family and Medical Leave Act*, 29 U.S.C. §2601-2654 ("FMLA"), as temporarily modified pursuant to the Families First Coronavirus Response Act ("FFCRA"). Plaintiff's complaint includes two (2) counts for relief, one for "interference" with *FMLA*, including FFCRA, rights and the other for "retaliation". Recently, Plaintiff voluntarily dismissed Count II, the retaliation count, leaving only the interference with FMLA count. ECF No. 12, 13. The crux of Plaintiff's allegations

are found at paragraphs 9-22[1] in relevant part:

> 9. Plaintiff was an employee for the Defendant since January 18, 2018 as a mold and fire technician.
>
> 10. During Plaintiff's employment, he was a satisfactory employee.
>
> 11. However, Plaintiff began feeling ill on or about March 30, 2020 and was coughing, which he promptly reported to Ms. Galarza [Plaintiff's supervisor].
>
> 12. Given he was exhibiting symptoms of COVID-19, on April 1, 2020, Ms. Galarza and Ms. Radewicz [Human Resources] informed Plaintiff to stay home and complete two health forms for leave which Plaintiff promptly returned the next day.
>
> 13. Thus, Plaintiff was to quarantine for a period of 14 days (i.e. April 15, 2020).
>
> . . .
>
> 16. On April 13, 2020, Plaintiff asked Ms. Galarza if he was able to return to work on April 15, 2020 as he needed to get back to work . . . .
>
> . . . .
>
> 13. Ms. Radewicz informed Plaintiff to provide a doctor's note that he was able to return to work.
>
> 14. Plaintiff subsequently obtained a doctor's note on April 14, 2020 that indicated he had self-quarantined due to a fever he experienced but could return to work as it had been 14 days.
>
> 16. On April 16, 2020, Plaintiff informed Ms. Radewicz and Ms. Galarza that he was getting tested for COVID-19 the following day (Friday, April 17, 2020).
>
> 17. The next business day . . . Mr. Getty [Vice President], Ms. Radewicz and Ms. Galarza called Plaintiff and terminated his employment.
>
> 18. Plaintiff obtained his test results after he was terminated, which in fact, confirmed that he was positive for COVID-19.

---

[1] Paragraphs 17-22 are misnumbered as 13-18.

ECF No. 1, pp. 2-4. Plaintiff also alleges Defendants unlawfully interfered with Plaintiff's exercise of his FFCRA rights by denying him benefits that he was afforded. *Id.*, ¶ 21. Plaintiff seeks all damages recoverable *under the FMLA* as temporarily modified by the FFCRA, and all litigation expenses and costs, including attorney's fees and any other lawful and equitable relief.

2. On or about July 20, 2020, Defendants filed their Answer and Affirmative Defenses. ECF No. 6.

3. Prior to filing his complaint, on or about April 2, 2020, Plaintiff's counsel sent a demand letter to Defendants, setting forth the same allegations as ultimately set forth in Plaintiff's complaint and demanding a "settlement".

4. Defendants' counsel submitted to Plaintiff's counsel a detailed response to the demand letter, providing a timeline of the specific facts, details, communications and related documents exchanged between Plaintiff and Defendants from on or around March 18, 2020 through on or around April 20, 2020, the relevant time period. A copy of Defendant's counsel's email to Plaintiff's counsel dated May 22, 2020 is attached hereto as Exhibit "A." As demonstrated therein:

   a. Mr. O'Bryan was on the schedule and worked on Monday – Wednesday, the week of March 16, 2020.

   b. However, on or about Wednesday, March 18, 2020, Mr. O'Bryan sent the following electronic communication from his phone to his supervisor, Glenda Galarza: "Hi Glenda, sorry I didn't see you before I left. I left shortly after lunch cause i was ***starting to get a headache which usually ends with a migraine***. I got home and took my migraine medication I'm good now. See you tomorrow."

   c. Around this same date, JTR sent a couple of employees home because they were

around someone who showed symptoms of COVID-19. For this same reason, and as JTR was being ultra-cautious with regard to the COVID-19 pandemic at this point back in March, JTR asked Mr. O'Bryan to provide a doctor's note relating to his headache symptoms before returning to work, as JTR wanted to make sure Mr. O'Bryan was not positive for Coronavirus. Mr. O'Bryan therefore was taken off the schedule as of March 19.

d. On or about March 23, 2020 (the following Monday), Mr. O'Bryan provided JTR with a return to work doctor's note, related only to his headache symptoms.

e. The note indicated Mr. O'Bryan was under Dr. Newcomer's care since March 9, 2020. Since it did not indicate anything relating to COVID-19, JTR allowed Mr. O'Bryan to return to work at this time. Additionally, Mr. O'Bryan was permitted to use his PTO from March 19 – March 24, so he did not miss any pay.

f. On Wednesday, March 25, Mr. O'Bryan did not report to work, this time due to an alleged *"stiff back"*. Ms. Galarza emailed him: "I hope all is well. This morning I was notified … you did not come to work today due to a "stiff back". I was not notified by you directly, so I am reaching out to confirm this was the case and to check on you. Can you please provide us with a description of you symptoms/pain/etc. and what might have caused this. Did you contact your doctor? I have copied HR and Aaron on this email to keep them in the loop. Thank you."

g. Mr. O'Bryan responded via electronic communication from his phone approximately fifteen (15) minutes later: "I did call my doctor that did my surgery and explained the problem and he said if I have been just laying around not doing anything that would cause it. He told me some stretches to do 1st thing when I wake

    up and walking will help."

h. Ms. Galarza then responded: "received your email, thanks for the quick reply. Since you already had a doctor's appointment scheduled for tomorrow and had asked to leave early, please take tomorrow off and let's touch base after your appointment to make sure all is well. Thank you."

i. Mr. O'Bryan replied: "Ok, thanks. Also sorry I didn't inform you sooner about not coming in today. I contacted Chris at 6am this morning and i know you said not to contact you that early so i was gonna contact you later."

j. Mr. O'Bryan continued to use his PTO for March 25 and 26, so he did not miss any pay.

k. Mr. O'Bryan worked on Friday, March 27 and the following Monday, March 30.

l. After hours on Monday, March 30, O'Bryan emailed Radewicz, inquiring as to pay issues relating to time missed from work due to COVID-19; Radewicz immediately responded and advised O'Bryan (and other others) would be able to take PTO or borrow against future PTO if out sick (the FFCRA was not effective until April 1, 2020).

m. Coincidentally, the next day, on March 31, 2020, Plaintiff advised Galarza via text message from his phone: "I called Christian this morning to let him know I wasn't coming in cause *I'm not feeling good. Was up coughing and a little dizzy last night no fever though. The coughing started yesterday. Feels like a chest cold*."

n. On April 2, 2020, Galarza and Radewicz called Plaintiff to notify him he was to provide them with COVID-19 test results. A follow-up email on the same day stated, "Tim, Thank you for taking our call today. I'm glad to hear you are not

coughing as much anymore and no fever! Please touch base with me every morning to keep me posted on how you are feeling. Attached you will find 2 forms to be completed and returned to me or HR if needed. Please confirm the attachments were received. Let us know if you need anything and get better soon! Thank you." The two (2) forms were a Certification of Employee for Eligibility for COVID Related Paid Leave and an Employee Request for Emergency Paid Sick Leave.

o. On April 2, Mr. O'Bryan signed and returned both forms. At this point, the Company started tracking the days associated with Mr. O'Bryan's self-quarantine, so as to know when the recommended 14-day period was up.

p. Galarza and Radewicz followed up with Mr. O'Bryan at that point, via telephone, and asked Mr. O'Bryan to provide JTR with any COVID-19 test results.

q. Mr. O'Bryan used his PTO for March 31 through April 3, 2020, while the Company attempted to confirm his eligibility for COVID related paid leave, pursuant to the FFCRA.

r. On April 6, 2020, Plaintiff left a voice mail on Galarza's phone informing her he was "100% better" and ready to come back to work.

s. As this was inconsistent with Mr. O'Bryan's previous reports, and because the company certainly did not want a potentially infected employee in the workplace, on Tuesday, April 7, 2020, Galarza emailed Plaintiff, "Tim, I hope you are feeling better. I received your voicemail yesterday. Please contact your Dr. to provide you with a note that says you are not contagious and you are released back to work or a negative test results. Thank you so much." **On the same day, Plaintiff emailed Galarza, "Hi Glenda, I spoke to my doctor and he advised me to self-quarantine**

     *the 2 weeks. I started running a fever last night but no other symptoms*. I'll keep you updated on how I'm doing. Talk to you soon."

t. The next day, April 8, 2020, Ms. Galarza followed up yet again: "Thank you for the update. Please take care of yourself and check in everyday so I know how you are doing. Thanks!"

u. On April 13, 2020, Plaintiff emailed Galarza, "Hi Glenda, just wanted to reach out and let you know I'm feeling fine and ready to come back Wednesday the 15th. My 2 weeks ends after tomorrow. *Never got any symptoms*. Hope to be on the schedule for Wednesday. Thank you." On the same day, Galarza emailed Radewicz, with copy to Getty and Plaintiff, "Tim, I received your email and have forwarded to Karen for her review and to advise on how to proceed."

v. Mr. O'Bryan's representation at this time that he "never got any symptoms" was inconsistent with his prior communications, to the effect that he started coughing as of March 30 and had a fever as recently as April 7. *Moreover, on April 7, Mr. O'Bryan reported that his doctor advised him to self-quarantine for 2 weeks, which would have been until April 21.*

w. On April 14, 2020, Galarza called Plaintiff to remind him that they still needed his COVID-19 test results. On the same day, Plaintiff also emailed Radewicz, "Hi Karen, I have a video call with my doctor at 2:15pm today to discuss me being able to return to work." Further, Plaintiff attached an updated Request for Emergency Paid Sick Leave to Radewicz's email, which alleged he had been advised by a doctor to quarantine since April 7, 2020.

x. On April 15, 2020, Plaintiff emailed Galarza and Radewicz a cropped photo of a

Page **7** of **13**

doctor's note. Radewicz responded on the same day, "Hi Tim, Thank you for sending the doctor's note over. Would you please take a photo of the entire document, we will need to see the doctor's facility to ensure we can accept it for returning to work."

y.  On April 16, 2020, Plaintiff emailed Galarza and Radewicz, "Hi Glenda & Karen, I have an appointment to get tested tomorrow at 10 am. When I get the results I'll let you know. Will that change my status on getting paid the sick pay?"

z.  On April 17, 2020, Plaintiff left a voice mail message with Radewicz, where Plaintiff stated that he was tested for COVID-19 and that it would take 5 days for results. Plaintiff also alleged that he spoke with someone from the CDC who told him he could have been considered "presumptive positive" on March 31.

aa. Finally, on the ensuing Monday, April 20, 2020, Ms. Galarza, Ms. Radewicz and the Company's Vice-President, Aaron Getty, called Mr. O'Bryan to see how he was feeling and if he had received the test results yet. During this conversation, which took place over speakerphone, Mr. O'Bryan admitted he had not been honest about the doctor and quarantining. As a result, JTR advised Mr. O'Bryan it would have to involuntarily terminate Mr. O'Bryan's employment as he had not been honest with the company. However, JTR agreed it would not challenge Mr. O'Bryan's claim for unemployment compensation benefits. JTR also gave Mr. O'Bryan the option of voluntarily resigning, but in that case, by law, he would not be eligible for unemployment. Mr. O'Bryan chose involuntarily termination. All three witnesses will attest to this conversation, including the fact Mr. O'Bryan specifically mentioned he "felt bad" about the entire situation as he always teaches

    his kids to be honest.

  bb. On April 23, 2020, Plaintiff left a voicemail with Radewicz stating he tested positive for COVID-19.

  cc. According to Dr. Newcomer's medical records, and completely contrary to that which O'Bryan advised Defendants, ***at no time*** did Dr. Newcomer direct Plaintiff to self-quarantine, remain at home, or isolate. Significantly, Dr. Newcomer noted on April 17, 2020, "I will not write letter that I directed [O'Bryan's] action when in fact I did not."

5. Not only do these facts suggest the claims are frivolous, the legal claims themselves are frivolous, as the FMLA has no application here.

6. Recently enacted in response to the COVID-19 pandemic, the Families First Coronavirus Response Act ("FFCRA"), Pub. L. No. 116-127, 134 Stat. 178 (2020), is divided into multiple divisions containing separate provisions. One division of the FFCRA contains the Emergency Family and Medical Leave Expansion Act ("EFMLEA"). 134 Stat. at 189–92. The EFMLEA temporarily amends the FMLA to entitle certain employees to 12 weeks of leave per year "because of a qualifying need related to a public health emergency." 29 U.S.C. § 2612(a)(1)(F). An employee has such a qualifying need if:

> the employee is unable to work (or telework) *due to a need for leave to care for the son or daughter under 18 years of age of such employee* if the school or place of care has been closed, or the child care provider of such son or daughter is unavailable, due to a public health emergency.

*Id.* at § 2620(a)(2)(A). The requisite "public health emergency" must be related to COVID-19. *Id.* at § 2620(a)(2)(B).

7. The other division of the FFCRA is the Emergency Paid Sick Leave Act ("EPSLA"). 134 Stat. at 195–201. *The EPSLA does not amend the FMLA*. Rather, it is a *separate*

*provision with enforcement provisions tied to the Fair Labor Standards Act*. § 5105, 134 Stat. at 197. Unlike the EFMLEA's single qualifying need, the EPSLA lists six circumstances related to COVID-19 which could trigger paid sick time. 134 Stat. at 195–96.[2]

8.  Plaintiff alleges only violations of the FMLA, as amended by the EFMLEA, under both an "interference" and "retaliation" theory. However, Plaintiff has not alleged he was unable to work *due to a need for leave to care for a child under 18 years of age*, whose school or place of care has been closed, or that the care provider of such child was unavailable, due to COVID-19. As such, Plaintiff's claims also are legally frivolous. *See Thornberry v. Powell Cty*. Det. Ctr., No. CV 5:20-271-DCR, 2020 WL 5647483, at *2 (E.D. Ky. Sept. 22, 2020).

9.  Plaintiff cannot, in good faith, allege he was denied paid sick time in this case, pursuant to the EPSLA (he was not).

## **MEMORANDUM OF LAW**

### A. Sanctions Should be Awarded Pursuant to Rule 11

Unless Plaintiff withdraws his Complaint within twenty-one (21) days of service of this motion, this Court should award Defendants their reasonable attorneys' fees and costs incurred in having to defend against this lawsuit.

### B. Legal Standard for Sanctions and Attorneys' Fees Pursuant to Rule 11

By filing a pleading in federal court, an attorney is certifying that to the best of his or her knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, *inter alia*:

---

[2] The FFCRA also permits retaliation claims related to FFCRA sick leave under the FLSA. *See Kofler v. Sayde Steeves Cleaning Serv., Inc.*, No. 8:20-CV-1460-T-33AEP, 2020 WL 5016902, at *4 (M.D. Fla. Aug. 25, 2020), citing 29 C.F.R. § 826.150(b)(2).

>    (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]
>
>    (3) the allegations and other factual contentions have evidentiary support or, if so identified specifically, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery ....

Fed. R. Civ. P. 11. In this Circuit, a district court has the discretion to award sanctions pursuant to Rule 11 under the following circumstances: "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose." *Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915 (11th Cir. 2003) (internal quotations and citations omitted).

To determine whether to impose Rule 11 sanctions, a court first determines "whether the party's claims are objectively frivolous – in view of the facts or law – and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether she would have been aware had she made a reasonable inquiry." *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996). If such a "reasonable inquiry" was not made, then the court must impose sanctions – despite a good faith belief that the claims were sound. *Id*.

Rule 11 sanctions are designed to "discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses." *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987) (*en banc*) (internal quotations and citations omitted). They "may be imposed for the purpose of deterrence, compensation and punishment." *Aetna Ins. Co. v. Meeker*, 953 F.2d 1328, 1334 (11th Cir. 1992). When a pleading, motion or other paper is

determined to be in contravention of Rule 11, the signing attorney and/or the party represented are subject to appropriate sanctions. *See* Fed. R. Civ. P.11(c).

Based on the Plaintiff's own allegations, it is abundantly clear that this entire lawsuit, and certainly the filed complaint, is completely frivolous. Accordingly, Defendants believe sanctions are appropriate under Rule 11, imposed on Plaintiff and his counsel.

## COMPLIANCE WITH RULE 11

A party seeking sanctions must first serve its Rule 11 motion on the opposing party—and allow 21 days for the offending party to cure the potential problem by withdrawing the offending paper, claim, or contention. *Meunier Carlin & Curfman, LLC v. Scidera, Inc.*, 813 Fed. Appx. 368, 375 (11th Cir. 2020). Per Fed. R. Civ. P. 11(c)(2), a copy of this motion was sent to opposing counsel on October 12, 2020. See email from Levine to Levy, dated October 12, 2020, attached as Exhibit B.

The complaint has not been withdrawn during the 21-day safe harbor period. The complaint, however, was amended to remove Count II for retaliation. Therefore, the only remaining count is Count I, and as it has not been withdrawn, it is sanctionable for the foregoing reasons.

Dated:  November 6, 2020  
       Boca Raton, FL

Respectfully submitted,

*s/ Daniel R. Levine*  
DANIEL R. LEVINE, ESQ.  
Florida Bar No. 0057861  
E-mail:  DRL@PBL-Law.com  
PADULA BENNARDO LEVINE, LLP  
3837 NW Boca Raton Blvd., Suite 200  
Boca Raton, FL   33431  
Telephone:    (561) 544-8900  
Facsimile:     (561) 544-8999  
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List below via transmission of Notices of Electronic Filing generated by CM/ECF.

*s/ Daniel R. Levine*
DANIEL R. LEVINE, ESQ.

## SERVICE LIST

*Timothy O'Bryan v. Joe Taylor Restoration, Inc., et al.*
Case No. 9:20-cv-80993-WPD
United States District Court, Southern District of Florida

| | |
|---|---|
| Chad E. Levy, Esquire<br>E-Mail:  chad@levylevylaw.com<br>Law Offices of Levy & Levy, P.A.<br>1000 Sawgrass Corporate Parkway, Suite 588<br>Sunrise, FL  33323<br>Counsel for Plaintiffs<br>Telephone:     (954) 763-5722<br>Facsimile:      (954) 763-5723<br>*Via CM/ECF* | Daniel R. Levine, Esquire<br>E-Mail:  DRL@PBL-Law.com<br>Padula Bennardo Levine, LLP<br>3837 NW Boca Raton Blvd., Suite 200<br>Boca Raton, FL  33431<br>Telephone:     (561) 544-8900<br>Facsimile:      (561) 544-8999<br>Counsel for Defendants<br>*Via CM/ECF* |
| David M. Cozad, Esquire<br>E-Mail:  david@levylevylaw.com<br>Law Offices of Levy & Levy, P.A.<br>1000 Sawgrass Corporate Parkway, Suite 588<br>Sunrise, FL  33323<br>Counsel for Plaintiffs<br>Telephone:     (954) 763-5722<br>Facsimile:      (954) 763-5723<br>*Via CM/ECF* | |