UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:20-cv-80993-WPD

TIMOTHY O'BRYAN

    Plaintiff,

vs.

JOE TAYLOR RESTORATION, INC., a Florida
Corporation, AARON GETTY, individually,
KAREN RADEWICZ, individually, and
GLENDA GALARZA, individually,

    Defendants.
_____/

**DEFENDANTS' VERIFIED MOTION FOR ATTORNEY'S FEES, NON-TAXABLE COSTS, AND INCORPORATED MEMORANDUM OF LAW**

Defendants, JOE TAYLOR RESTORATION, a Florida for profit corporation ("JTR"), AARON GETTY, individually, KAREN RADEWICZ, individually, and GLENDA GALARZA, individually (hereinafter collectively referred to as "Defendants"), pursuant to 29 U.S.C. § 216(b), Fed. R. Civ. P. 11(b)(3), and S.D. Fla. L.R. 7.3(a), hereby file their verified motion for attorneys' fees, non-taxable costs, and incorporated memorandum of law.

**I.    Introduction**

The Families First Coronavirus Response Act ("FFCRA"), Pub. L. No. 116-127, 134 Stat. 178 (2020), contains two (2) provisions mandating some form of paid leave entitlement for employees impacted by COVID-19. At issue here was the Emergency Paid Sick Leave Act ("EPSLA") where, in relevant part, an individual may qualify for paid sick leave if the employee (1) is subject to a Federal, State, or local quarantine or isolation order related to COVID–19; (2) has been advised by a health care provider to self-quarantine due to concerns related to COVID–

19; or (3) is experiencing symptoms of COVID–19 **_and_** seeking a medical diagnosis. *See* FFCRA, PL 116-127, March 18, 2020, 134 Stat 178 at 195-96. Importantly, employers were incentivized to permit EPSLA leave because it was fully subsidized by the federal government. *New York v. United States Dep't of Labor*, 477 F. Supp. 3d 1, 5 (S.D.N.Y. 2020).

Just *hours* before the FFCRA and its attendant provisions went into effect, Defendants believe O'Bryan attempted to game the system in order to take advantage of his employer and the federal government's response to an unprecedented global pandemic by claiming entitlement to EPSLA sick pay. Because the EPSLA was fairly lenient in terms of eligibility, Plaintiff only needed to provide Defendants with a modicum of proof — a doctor's order, COVID-19 test results — to justify Defendants' use of federal tax dollars. He failed to provide same and eventually, his story unraveled, forcing him to admit to JTR he lied and thereby causing his termination.

When Plaintiff sued, Defendants had two choices: (1) settle the case by paying the two (2) weeks of sick leave, plus some reasonable sum of attorneys' fees and costs, or (2) defend it, prevail, and hope the Court agrees that this case was without the proper evidentiary support from day one, which should entitle the prevailing Defendants to fees. Because Defendants did not believe they should be forced to settle a case they believed was subjectively and objectively frivolous, Defendants chose to defend the case to the bitter end, and the jury justified Defendants' decision to not bow to a frivolous lawsuit.

That said, Defendants appreciate the threshold for purposes of recovering fees. However, this case never should have been filed, let alone maintained through trial. O'Bryan's *only* evidentiary support was his own self-serving testimony, notwithstanding there were witnesses (family members, co-workers) who theoretically could have offered evidentiary support. O'Bryan also could have presented testimony from Dr. Jack Newcomer – the very provider who Plaintiff

claimed directed him to quarantine. Yet he failed to present any supporting testimony or evidence. And notwithstanding the case proceeding through the rendition of a jury verdict, Defendants contend O'Bryan pursued this case in bad faith. Bad faith aside, Defendants can demonstrate Plaintiff and his counsel maintained this case without evidentiary support.

Defendants now bring this motion to recover the attorneys' fees and non-taxable costs expended in defense of this lawsuit. JTR was in an untenable position: risk playing fast-and-loose with government funding, for which there could have been adverse consequences, or spend thousands of hard-earned dollars to defend itself against a lawsuit brought by a plaintiff *who JTR knew had lied to them about the course of his treatment because he had admitted it to them months earlier.* This Court must award sanctions to show there are consequences for filing lawsuits *so lacking in evidentiary support*, particularly where government dollars are concerned.

## II. Factual Basis for Attorney's Fees and Non-Taxable Costs

### a. Facts occurring prior to suit being filed[1]

At the beginning of 2020, O'Bryan was working for JTR in January 2018 as a cleaning technician, responsible for cleaning and tear-down of drywall affected with mold, fire, or water damage. Beginning the week of March 16, 2020, O'Bryan's work attendance became erratic. On March 18, 2020, he texted his supervisor, Glenda Galarza, he "left [work] shortly after lunch [because he] was starting to get a headache, which usually ends with a migraine." He did not work at all on March 19 or 20. At this time, Plaintiff did not believe he had contracted COVID-19. The next week, O'Bryan was absent from work again on March 25 and March 26, this time due to an alleged "stiff back" and a previously scheduled doctor's appointment for his back pain.

---

[1] The facts are derived from the unopposed facts in support of Defendants' summary judgment (ECF No. 34 and 35) and the parties' joint pre-trial stipulation (ECF No. 57).

After regular business hours on March 30, 2020, O'Bryan claims he began coughing. ***Notwithstanding he did not believe he had COVID-19 at this time***, O'Bryan emailed Karen Radewicz, then the head of HR for JTR, inquiring how to receive pay for any time he might miss due to COVID-19. Radewicz immediately advised O'Bryan he would be able to use accrued, or borrow against future unaccrued, paid time off. During this inquiry, O'Bryan did not mention anything to Radewicz about experiencing a cough, dizziness, or a chest cold. Yet approximately twelve hours later, in the early morning hours of March 31, O'Bryan advised Galarza via text message he wasn't coming in because he "[w]as up coughing and a little dizzy last night [but had] no fever []. The coughing started yesterday. Feels like a chest cold." O'Bryan did not work on March 31 or April 1, 2020 (or any day thereafter for JTR).

***On April 2, 2020***, Galarza and Radewicz notified O'Bryan JTR would require him to provide a negative COVID-19 test before returning to work and provided him with forms to complete to determine his eligibility for the newly passed EPSLA. In completing and returning the forms on April 2, O'Bryan initially indicated he was "*subject to a Federal, State or Local Quarantine or Isolation Order related to COVID-19*." Since he selected that option, Radewicz advised O'Bryan that the Department of Labor -- not just JTR -- required "the name of the government entity that issued the quarantine or isolation order to which [he] was subject." Radewicz also cautioned O'Bryan, "You may not receive federal funds for Sick Leave if you do not meet the qualifications set forth by [DOL]." It is undisputed *O'Bryan never provided any applicable government entity's order*.

On April 6, 2020, O'Bryan left a voice mail for Galarza, indicating he felt "100% better" and was ready to return to work. On April 7, Galarza responded, advising him to provide a doctor's note confirming he was not contagious and releasing him to return to work. O'Bryan then

Page **4** of **20**

backtracked, *advising Galarza by email that he spoke to Dr. Newcomer that very day (April 7), who "advised [him] to self-quarantine the two weeks."* O'Bryan added he started "running a fever last night but [had] no other symptoms." A little less than a week later, on April 13, O'Bryan repudiated his April 7 email about Dr. Newcomer's quarantine order by emailing Galarza and stating he was "feeling fine and ready to come back Wednesday, the 15th," due to his quarantine ending, adding, as of April 13, 2020, he "*never got any symptoms.*"

***On April 14, 2020***, O'Bryan updated his April 2 sick leave form, this time indicating (consistent with his repudiated April 7 email) that *Dr. Newcomer ordered him to self-quarantine due to concerns related to Covid-19*. During his April 14 appointment — *his first visit with Dr. Newcomer since allegedly developing COVID symptoms* — Dr. Newcomer noted O'Bryan *self-reported* a "fever" of 100.1 degrees "two weeks prior", but at the time of the visit, Dr. Newcomer did not observe any signs or symptoms of COVID-19, including a fever. In fact, the notes confirmed the self-reported fever resolved within 24 hours. Dr. Newcomer's progress note for April 14, 2020, confirms Plaintiff was healthy and ready to return to work as of April 14, and that he had *no symptoms or signs of Covid-19*. Notably absent from Dr. Newcomer's April 14 notes is a quarantine order.

When asked for a doctor's note to substantiate the physician-ordered quarantine, O'Bryan provided JTR with a note on April 15, 2020, which stated, in part, that O'Bryan "had fever 14 days prior," "had been self-quarantined at home," and "[a]s he's evaluated today, he is healthy and ready to return to work." But since he previously had advised JTR on April 7, 2020, of Dr. Newcomer's alleged quarantine order, Radewicz advised O'Bryan again that JTR needed a doctor's note stating he was out of work *as of April 7* because of a physician-ordered quarantine.

Instead, on April 16, 2020, O'Bryan advised JTR he scheduled an appointment for April 17, 2020, to get a COVID-19 test – *after his 2-week quarantine already had expired.*

Dr. Newcomer's April 17, 2020, Progress Note confirms once again he never directed O'Bryan to quarantine or isolate. Dr. Newcomer also confirms in this note he was not informed of any claimed fever until two weeks *after the fact* and only in connection with the request for a return-to-work letter on April 14. Dr. Newcomer had a "frank discussion" with Plaintiff, in which he told Plaintiff he could not write a return-to-work letter, a "medical-legal document," **without any basis for doing so**. Dr. Newcomer's note concludes, "**I will not write letter that I directed his action when in fact I did not**".

Because he had not provided a negative COVID-19 test, and because – separate and apart from his alleged sick pay eligibility -- he was seeking to return to work after advising Defendants of his doctor's direction to quarantine, Defendants contacted O'Bryan by phone on April 20, 2020, to determine if he indeed had followed through with his COVID-19 test, whether he knew the test results, and to otherwise form expectations for both sides as they proceeded. During the call, O'Bryan admitted he had been dishonest about Dr. Newcomer directing him to quarantine on April 7 and apologized to for lying about it. The truth was, he never was directed to quarantine by a medical provider. In fact, O'Bryan felt poorly about everything that had transpired because he "teaches his sons to be honest and to do the right thing." Finally, he mentioned he was already thinking of quitting or not returning to work following his self-quarantine. JTR then terminated O'Bryan because he was dishonest, and he understood JTR terminated him for that reason.

        **b.**    **Facts brought out during the course of the lawsuit and trial**

On May 22, 2020, in response to Plaintiff's presuit demand letter, undersigned counsel sent a lengthy and comprehensive email to O'Bryan's counsel, including screenshots of documentary

evidence setting forth many of the facts detailed above. *See* May 22, 2020, email attached hereto as Exhibit "A". In particular, the correspondence set forth the details concerning (1) O'Bryan's erratic late-March-2020 work attendance; (2) the March 31 and April 1-2, 6-7, 13-17 emails with JTR and O'Bryan; and (3) a summary of the April 20 phone call wherein O'Bryan admitted his dishonesty. *Id*. Given the objective frivolity of the facts *as known at or before the time suit was filed*, Defendants notified Plaintiff and his counsel of their intent to seek sanctions under applicable rules and statutes in the event they determined to file suit. *Id*.

On June 23, 2020, O'Bryan sued Defendants under the Family and Medical Leave Act and the FFCRA for interference with use of FMLA rights and retaliation for exercising FMLA rights, seeking damages and attorney's fees as compensation. ECF No. 1. The FMLA did not appear to apply to the facts as pled. As temporarily amended by the FFCRA, the Emergency Family and Medical Leave Expansion Act entitled certain employees to 12 weeks of FMLA leave per year "because of a qualifying need related to a public health emergency," 29 U.S.C. § 2612(a)(1)(F), if

> the employee is unable to work (or telework) *due to a need for leave to care for the son or daughter under 18 years of age of such employee* if the school or place of care has been closed, or the childcare provider of such son or daughter is unavailable, due to a public health emergency.

*Id.* at § 2620(a)(2)(A). The requisite "public health emergency" must be related to COVID-19. *Id.* at § 2620(a)(2)(B). Since there were no allegations in the complaint related to childcare, it did not appear as if O'Bryan could state a cause of action.

Within the first few months of the litigation, Defendants served Dr. Newcomer with a non-party subpoena, seeking the medical records related to O'Bryan's treatment. Within one week, Dr. Newcomer's office provided all records for O'Bryan's visits in 2020. After reviewing the records, which included the April 17 note where Dr. Newcomer *fully disavowed* ever ordering O'Bryan to quarantine, Defendants provided a copy of the subpoenaed records to O'Bryan's counsel.

***Importantly, O'Bryan's counsel acknowledged this was the first time he himself even had reviewed Dr. Newcomer's records, confirming his failure to investigate these same records pre-suit***. *See* October 12, 2020, email attached hereto as Exhibit "B".

At that time, Defendants served (but did not file) their first motion for Rule 11 sanctions, arguing both the facts and the causes of action were frivolous. Defendants argued the FMLA causes of action were fatally flawed due to the lack of allegations related to childcare. Supporting the objective frivolity of the case's facts, Defendants argued the points from its May 22, 2020, email, and added arguments based on Dr. Newcomer's records. *See* Exhibit "A". Yet O'Bryan failed to dismiss or even agree to amend the complaint prior to the running of Rule 11's twenty-one (21) day safe-harbor provision. Defendants therefore filed the Rule 11 motion along with a motion for judgment on the pleadings, for the same *legal* grounds as argued in the Rule 11 motion. In response, and considering the import of Dr. Newcomer's medical records, O'Bryan actually dismissed Count II of his complaint (for alleged retaliation) -- *albeit after the safe-harbor period expired* – and filed an amended complaint with the Court's permission re-alleging only the count for two weeks of unpaid sick leave *pursuant to the EPSLA*.

Ultimately, this Court denied the first Rule 11 motion – relating to the original complaint and not the amended complaint -- but did state, "Defendants may bring any fact-based Rule 11 motion before the Court at the appropriate time, if they can do so in good faith and without Defendants themselves or their counsel violating Rule 11." ECF No. 30. After the amended complaint was filed, and after Plaintiff admitted his dishonesty at his deposition in this case, Defendants again served (but did not file) a *second* Rule 11 motion, based on the frivolous nature of the facts *as they were known at that time (and, truly, on May 22, 2020). See* November 23, 2020, email, attached as Exhibit "C."

Defendants moved for summary judgment, which this Court denied based on *allegedly* disputed facts. *See* ECF No. 49. At trial, O'Bryan neither identified nor called as witnesses anyone who might offer corroborating testimony supporting Plaintiff's claims he was experiencing symptoms of COVID-19 and seeking a medical diagnosis — no one from any COVID-19 testing facility, no medical provider, no co-workers, not even family members. Nor did he introduce any COVID-19 test result as support for his own self-serving testimony he tested positive *after* he was terminated. It is hardly surprising the jury took all of about an hour to deliberate and reach their unanimous verdict in favor of Defendants. The jury did not even reach Defendants' affirmative defense, instead simply finding O'Bryan failed to prove his claim in the first instance.

### III.   Argument and Memorandum of Law

#### a.   Law at issue

##### i.   "Prevailing Defendant" fees under 29 U.S.C. § 216(b)

EPSLA claims are judged under FLSA standards. Employers who do not provide paid sick leave as required under the EPSLA are considered to have failed to pay minimum wages in violation of section 6 of the FLSA, 29 U.S.C. § 206, and such employers are subject to enforcement proceedings described in sections 16 and 17. 29 U.S.C. §§ 216, 217. The FLSA entitles a prevailing defendant to attorney's fees where the district court finds the plaintiff "litigated in bad faith." *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1437 (11th Cir. 1998); *Kreager v. Solomon & Flanagan*, 775 F.2d 1541, 1543 (11th Cir. 1985); *Hubbard v. Jerry's Seamless Guttering, Inc.*, 2020 WL 6038110, at *3 (S.D. Fla. Oct. 6, 2020); *Goss v. Killian Oaks House of Learning*, 248 F.Supp.2d 1162, (S.D. Fla. 2003). This power derives from common law; courts possess the "inherent power" to award attorneys' fees to a prevailing defendant when a plaintiff has "acted in bad faith, vexatiously, wantonly or for oppressive reasons. *Alyeska Pipeline Co. v. Wilderness*

*Society*, 421 U.S. 240, 258-59 (1975). Bad faith is determined by conduct and motive, rather than on the case's validity. *Murray v. Playmaker Services, LLC*, 548 F. Supp. 2d 1378, 1381 (S.D. Fla. 2008), *aff'd*, 325 Fed. Appx. 873 (11th Cir. 2009), citing *Kreager*, 775 F.2d at 1543. In this context, "bad faith" "is not limited to filing, but also encompasses "acts preceding and during litigation." *Flores v. Park W. Parking LLC*, 2008 WL 11409098, at *8 (S.D. Fla. Feb. 1, 2008), citing *Kreager*, 775 F.2d at 1543; *see also Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991) ("When it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest.").

## ii. Rule 11

Rule 11 generally requires litigants "'stop-and-think' before initially making legal or factual contentions." *See* Fed. R. Civ. P. 11 advisory committee's note (1993); *Brown v. Generac Power Sys., Inc.*, 2021 WL 1030229, at *2 (S.D. Fla. Feb. 27, 2021), *report and recommendation adopted*, 2021 WL 1022872 (S.D. Fla. Mar. 17, 2021). Unlike an award of fees to a prevailing defendant under 29 U.S.C. § 216(b)), Rule 11 involves an "objective standard for testing conduct": "'reasonableness under the circumstances' and 'what was reasonable to believe at the time' the pleading [or other document] was submitted." *Flores*, 2008 WL 11409098, at *10.

By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances*:

>    (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
>    (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;

Fed. R. Civ. P. 11(b). If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Fed. R. Civ. P. 11(c).

> A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11(c)(1), (4); *Showan v. Pressdee*, 922 F.3d 1211, 1224 (11th Cir. 2019). A court may subject a represented party to Rule 11 sanctions if, for example: (1) the allegations in the complaint were frivolous and the plaintiff "knew or should have known that the allegations in the complaint were frivolous ...," *Byrne v. Nezhat*, 261 F.3d 1075, 1117 (11th Cir. 2001); (2) Plaintiff "misrepresent[ed] facts in the pleadings ...," *id*. at 1118; or (3) the action was frivolous and Plaintiff "was the 'mastermind' behind the frivolous case ...," *id*. Additionally, Rule 11 "'stresses the need for *some* prefiling inquiry....'" *Mike Ousley Productions, Inc. v. WJBF-TV*, 952 F.2d 380, 382 (11th Cir. 1992), citing *Donaldson v. Clark*, 819 F.2d 1551, 1555 (11th Cir. 1987) (*en banc*). The reasonableness of the inquiry may depend on such factors as "how much time for investigation was available to the signer," and "whether he had to rely on a client for information as to the facts underlying the [violative document]." *Id*. at 1556.

Rule 11 motions are not required to be *filed* before the offending provision is disposed of. In *Abreu v. Alutiiq-Mele, LLC*, 2012 WL 4369734, at *9 (S.D. Fla. Aug. 3, 2012), *report and recommendation adopted in part*, 2012 WL 4369663 (S.D. Fla. Sept. 24, 2012), the court held a Rule 11 motion that was *served* three (3) months before (but filed *after*) defendants' summary

judgment motion was granted complied with the 21-day safe harbor provision. *Id*. So long as a Rule 11 motion is *served* in compliance with its 21-day safe harbor provision and prior to final judgment being entered, the motion can be filed *after* the offending paper is disposed of. *Id.*[2]

### iii. Appropriateness of sanctions if a case is decided by a jury

It is expected this motion will be opposed because the case went to a trial on the merits before a 7-person jury and, therefore, the case could not be objectively or subjectively frivolous.[3] However, the Eleventh Circuit has upheld Rule 11 sanctions imposed after a case went to trial and resulted in a defense verdict, *particularly when there was not an adequate pre-trial investigation*. In *Mike Ousley*, 952 F.2d at 383, the Eleventh Circuit upheld Rule 11 sanctions against plaintiff's attorney due to a failure to conduct an adequate pretrial inquiry. *Id*. ("Hooper does not claim that he lacked the time to investigate the facts; he was not forced to rely solely on his client, because he could have contacted the two men from whom his client claimed to have received information; and he did not depend on another lawyer."); *see also Battles v. City of Ft. Myers*, 127 F.3d 1298 (11th Cir. 1997). Here, Plaintiff's counsel certainly could have attempted to speak to Plaintiff's family members, medical provider and even his co-workers, yet he simply rested on Plaintiff's "testimony".

Courts also have imposed sanctions under different fee-shifting statutes under prevailing-defendant standards for failure to produce evidence at trial. In cases interpreting 42 U.S.C. § 1988 and the authority of *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978), courts have held where there is "no evidence" produced at trial to substantiate discrimination claims, the claim

---

[2] Additionally, the served Rule 11 motion need not be identical to the filed one, so long as it raises the same issues. *Abreu*, 2012 WL 4369734, at *10.

[3] Importantly, the jury unanimously ruled in favor of Defendants, deciding against O'Bryan in the first instance without reaching Defendant's proffered defenses.

is frivolous and attorney's fee awards to the defendant may be granted. See *Harris v. Plastics Mfg. Co.*, 617 F.2d 438, 440 (5th Cir. 1980) (awarding attorney's fees to a Title VII defendant because there was "no evidence" to support the claim). "A firmly held belief in injustice by people who receive unfavorable employment actions, *unsupported by any **reasonable** basis*…is not enough to insulate party and counsel from responsibility to the opposing party and system for pursuing meritless litigation." *Gilyard v. S.C. Dept. of Youth Services,* 667 F. Supp. 266, 277-78 (D.S.C. 1985).

### b. Summary of the Motion

Defendants seek attorney's fees and non-taxable costs under the authority of the two statutes cited above. Defendants seek sanctions under the prevailing defendant, bad-faith FLSA standard against O'Bryan *personally* for bringing a claim which he knew was not factually supported from the start, but at the very least, for continuing the litigation in bad faith after receipt of Dr. Newcomer's records. Defendants also seek Rule 11(b)(3) sanctions against O'Bryan and his counsel for maintaining a factually frivolous case, which became plain *at the latest* when they received Dr. Newcomer's records stating he never directed O'Bryan to quarantine at any time.

### c. An award of sanctions under Rule 11(b)(3) against O'Bryan and his counsel is warranted because O'Bryan's factual contentions never had any evidentiary support at the outset or a chance at evidentiary support after discovery.

The undisputed facts of this case demonstrate O'Bryan twice attempted to qualify for emergency paid sick leave under the EPSLA for reasons he knew or had reason to know would not apply. First, on April 2, 2020, O'Bryan alleged he was subject to a governmental (federal, state, or local) quarantine order. That was not true at the time the statement was made and it was not made true at any point thereafter. O'Bryan was unable to provide any document substantiating a government-ordered quarantine for him, nor was there any testimony at trial to that extent. Then, *on April 14, 2020*, O'Bryan updated (*and back-dated to April 7*) the employer's sick leave form

and indicated his medical provider directed him to quarantine *as of April 7, 2020*. As this Court well knows, Dr. Newcomer ***completely disavowed*** any alleged direction to quarantine. This certainly would have been known to O'Bryan on April 17, 2020 (when Dr. Newcomer's chart note indicates he spoke to O'Bryan), but at *worst*, it was made clear on October 12, 2020, when Defendants provided Dr. Newcomer's subpoenaed records to O'Bryan and his counsel.

And while he never relied on this point when he attempted to justify his eligibility for emergency sick pay prior to filing suit, O'Bryan also attempted to assert during the litigation he qualified for emergency sick pay as he was "experiencing symptoms of COVID-19 and seeking a medical diagnosis." *Yet the only evidence produced in support of this theory was O'Bryan's own unsupported self-serving testimony that he started "coughing" on March 31, 2020, and allegedly had a "fever" on April 6, 2020*. Dr. Newcomer's notes contradict the claim of fever on April 6, noting only Plaintiff self-reported a fever on April 1 that resolved within a day. No other witness offered corroborating testimony as to O'Bryan's alleged experience of COVID-19 symptoms. Nor did O'Bryan introduce any COVID-19 test to support his self-serving testimony that he tested positive after Defendants terminated him. In other words, O'Bryan's only scintilla of evidence in support of his claim was his *ipse dixit* statements that he had isolated symptoms *at two different points in time* and that he was "trying" to get an appointment with his doctor and/or for a COVID-19 test.

Supporting the objective frivolity of this case is the fact that *neither theory required any discovery at all*. O'Bryan knew he was never subject to a government-ordered quarantine. O'Bryan knew he never was directed to quarantine by Dr. Newcomer – not on April 7, not on April 14, not ever. He knew neither of these scenarios were true at the of the initial complaint; it was not reasonable for O'Bryan to believe he was subject to a government- or physician-ordered quarantine

at any time. Yet Plaintiff pursued his frivolous lawsuit up through and including trial, and the jury rightfully returned a verdict against him. Moreover, any chance of gathering evidentiary support during discovery was uniquely in O'Bryan's control. He could have offered the testimony of his co-workers, who he claimed were with him when he allegedly started "coughing" as he returned from a job site on March 30, 2020. He could have offered the testimony of his wife and/or three (3) adult sons, about his alleged symptoms and/or efforts to seek a COVID-19 test or medical diagnosis. But he didn't. Said plainly, he had no chance of establishing he was experiencing symptoms of COVID-19 and seeking a diagnosis for same on the strength of his testimony alone – particularly when he *admitted* lying, initially to his employer and subsequently to a jury of his peers.

As cited above, Rule 11 sanctions are warranted due to a lack of adequate pre-filing investigation and lack of evidentiary support for the alleged claims *See Mike Ousley* and *Battles*. *Hughes v. Defender Assn' of Philadelphia*, 509 F. Supp. 140, 141 (E.D. Pa. 1981) is persuasive as there was a failure to produce evidence and reliance on conclusory testimony only. The plaintiff alleged he was discriminated against in the terms and conditions of employment, demoted, and finally terminated because he is black. *Hughes*, 509 F. Supp. at 141. After a verdict in favor of the former employer, fees were sought under 42 U.S.C. § 1988 and the authority of *Christianburg Garment Co.*, 434 U.S. at 421 ("[A] district court may in its discretion award attorney's fees to a prevailing party in a Title VII case upon a finding that the plaintiff's action was *frivolous, unreasonable, or without foundation*, even though not brought in subjective bad faith.").

The court awarded the former employer attorneys' fees and costs because the plaintiff's case "consisted largely of his conclusory allegations that he had been discriminated against, and that his fellow employees were racists." *Id*. at 142. Similarly, the plaintiff offered "no evidence in

support of his charge that he had been discriminated against in the terms and conditions of employment." *Id*. The court even stated, "Although I believed that Hughes had produced *virtually no evidence to support a finding that he had been discriminated against, out of an abundance of caution I allowed the case to go to the jury*, which after *thirty minutes' deliberation* returned a verdict in favor of the defendants." *Id*. As a result of a stipulation reached between the parties, the court ultimately awarded the former employer only its attorney's fees incurred *after* the verdict, but importantly opined, "*Had they not withdrawn their request*, defendants may well have been entitled to an award for the fees they incurred *in defending the case until verdict*." *Id*.

In sum, O'Bryan brought this lawsuit seeking emergency paid sick leave under the EPSLA, a government program with lenient eligibility standards. Even before this lawsuit was filed, O'Bryan knew or should have known he did not do what was necessary to qualify for the sick pay leave. He did not produce any quarantine order from a governmental entity or a physician. He also failed to produce any evidence other than his own conclusory testimony about his experiencing symptoms of, and seeking diagnosis for, COVID-19. The allegations in the Amended Complaint were frivolous and O'Bryan knew or should have known that before the case was filed, and certainly after Dr. Newcomer provided his medical records. Rule 11 sanctions are appropriate.

**d.    An award of prevailing-defendant attorney's fees under 29 U.S.C. § 216(b) against O'Bryan personally is appropriate for the same reasons as above.**

In addition to the factual basis set forth above for the Rule 11(b) sanctions, O'Bryan knew or should have known he was not entitled to paid sick leave under the EPSLA. Defendants subpoenaed O'Bryan's medical records from Dr. Newcomer, which revealed that not only did Dr. Newcomer not order O'Bryan to ever quarantine, but that O'Bryan did not even report to him on April 14 or 17 with *any signs or symptoms of COVID-19.* In fact, Dr. Newcomer confirmed in this note he was not informed of any claimed fever by O'Bryan until two weeks *after the fact* and only

in connection with the request for a return-to-work letter on April 14. If Dr. Newcomer, whose practice involves diagnosing signs and symptoms of diseases, confirmed O'Bryan had no signs or symptoms of COVID-19 *while O'Bryan was visiting the doctor for that very diagnosis*, that should have been the end of it. Instead, O'Bryan maintained his suit, causing Defendants to have to incur further fees all the way through trial to defend themselves. Tellingly, after Defendants provided O'Bryan's counsel with the medical records, which clearly stated he never directed him to quarantine and in fact he had no signs or symptoms of COVID-19, O'Bryan dismissed the *retaliation* count of his Amended Complaint, knowing he would not be able to prove Defendants' termination of his employment constituted retaliation. Yet Plaintiff's counsel doubled down on the two (2) week emergency paid sick leave claim, notwithstanding this claim turned on the same evidence.

In *Flores*, an action for allegedly unpaid overtime, the plaintiff had provided objectively reasonable bases for continuing litigation. *Flores*, 2008 WL 11409098, at *8. The *Flores* plaintiff produced evidence that (1) the defendants did not properly maintain record of overtime worked; (2) although plaintiff was primarily responsible for recording his time, his supervisors maintained "backup" sheets, later shown to be inaccurate; and (3) plaintiff regularly and routinely was paid overtime wages in cash. *Flores*, 2008 WL 11409098, at *14–15. The court thus held it was **_objectively reasonable_** for the plaintiff to believe a jury **_might_** find for him and defendant was likewise not entitled to fees under 29 U.S.C. § 216(b). *Id*. at *16. Here, O'Bryan did not produce a *single* witness to corroborate his claim he experienced COVID-19 symptoms, his claim that he sought a medical diagnosis at any time prior to his *after-the-fact* visits confirmed by Dr. Newcomer's chart notes, when Plaintiff desperately needed a return-to-work letter, or his claim that he tried to get tested. And Dr. Newcomer did not observe *any* signs or symptoms of COVID-

19 when he finally saw Plaintiff *after* his quarantine period, instead noting in his charts O'Bryan *self-reported* an isolated one-day fever two weeks prior. And O'Bryan made no attempt to introduce any alleged COVID-19 test at trial. Sanctions should be granted under the prevailing defendant standard of 29 U.S.C. § 216(b).

    **IV.**    **Amount of Attorney's Fees and Non-Taxable Costs Sought**

        **a.**    **Identity, experience, & qualifications for each timekeeper:**

Daniel R. Levine's qualifications are set forth in his affidavit. *See* Affidavit of Daniel R. Levine, attached as Exhibit "D." He has been practicing in the State of Florida, exclusively in labor and employment law, for over twenty-five (25) years, designated by the Florida Bar as a *Board-Certified Specialist* in this practice area since 2002. Alex B.C. Ershock has been practicing in the State of Florida since 2012. He first worked at the Attorney General's Office for four years, at a private firm for nearly four years, and now works for undersigned counsel's Firm, working primarily on labor and employment matters. He is admitted to practice before all federal courts in the State of Florida, and the Eleventh Circuit Court of Appeals. Alicia Kendrick has been practicing as a paralegal since 1994. She has been employed with Mr. Levine since 2005 and has been a Florida Registered Paralegal for 13 years.

        **b.**    **Number of hours reasonably expended and reasonable hourly rates**

| Timekeeper | Hourly Rate | Number of Hours | Total Fees Charged |
|---|---|---|---|
| Daniel R. Levine | $450.00 | 160.00 | $ 72,000.00 |
| Alex B.C. Ershock | $300.00 | 196.40 | $ 53,920.00 |
| Alicia Kendrick | $125.00 | 22.10 | $ 2,762.50 |
| TOTAL | | 378.50 | $ 126,807.50 |
| **Non-Taxable Costs** | | **Total** | |
| Mediation | | $ 700.00 | |

    **c.**  **Description of the tasks done by each timekeeper:**

Mr. Levine was lead counsel in this matter and represented all Defendants; Mr. Ershock and Ms. Kendrick assisted in representation. Detailed time entries and descriptions of tasks done by each timekeeper are provided in the bills and invoices, which are attached hereto as Composite Exhibit "E." The hourly rate and time expended are reasonable. Defendants have incurred **$126,807.50** in attorneys' fees in the defense of this suit.

Defendants also incurred **$700.00** in non-taxable mediation costs. See Exhibit "F." It is well settled mediation expenses are recoverable as non-taxable costs. *Wen Liu v. Univ. of Miami, Sch. of Med.*, 2018 WL 4613326, at *4 (S.D. Fla. Sept. 26, 2018); *see also Taverna Imports, Inc. v. A&M Wine & Spirits, Inc.*, 2019 WL 12446711, at *6 (S.D. Fla. Oct. 2, 2019) (award of mediation costs permissible under Court's inherent authority).

WHEREFORE, Defendants, JOE TAYLOR RESTORATION, a Florida for profit corporation ("JTR"), AARON GETTY, individually, KAREN RADEWICZ, individually, and GLENDA GALARZA, individually, respectfully request this Court enter an Order awarding them attorneys' fees of **$126,807.50**, non-taxable costs in the amount of **$700.00**, and any further relief this Court deems just and proper.

### VERIFICATION UNDER LOCAL RULE 7.3(a)(7)

Exhibit D is a sworn statement from the primary billing attorney regarding the fees and costs reasonably incurred in defense of this matter, which is sufficient to verify the contents of this motion. *See Arnold v. Heritage Enterprises of St. Lucie, LLC*, 2018 WL 1796265, at *4 (S.D. Fla. Jan. 25, 2018), *report and recommendation adopted*, 2018 WL 1795447 (S.D. Fla. Feb. 13, 2018); *Hernandez v. Target Corp.*, 14-21062-CIV, 2016 WL 4006656, at *2 (S.D. Fla. Mar. 30,

2016); *Morris v. Arizona Beverage Co., L.L.C.*, 2005 WL 5544961, at *8 (S.D. Fla. Feb. 9, 2005).

## LOCAL RULE 7.3(a)(8) CERTIFICATION

Pursuant to Local Rule 7.3(a)(8), undersigned counsel hereby certifies he served a draft of this motion in accordance with Local Rule 7.3(a) on July 12, 2021. Opposing counsel reviewed the motion and responded, "I don't think much of a conferral is needed given the grounds raised in the motion," but that if there was "anything else" to talk about, undersigned could reach out. On July 26, 2021, fourteen days after the initial service of the motion, opposing counsel's objections to time entries and hourly rates, with supporting legal authority, were due per the Local Rule. No objections as to time or amount were received by undersigned counsel.

In sum, the parties were unable to agree on any issues of entitlement to fees or amounts of fees.

Dated:  July 28, 2021                                  Respectfully submitted,
       Boca Raton, FL

                                              *s/ Daniel R. Levine*
                                              DANIEL R. LEVINE, ESQ.
                                              Florida Bar No. 0057861
                                              E-mail:  DRL@PBL-Law.com
                                              PADULA BENNARDO LEVINE, LLP
                                              3837 NW Boca Raton Blvd., Suite 200
                                              Boca Raton, FL   33431
                                              Telephone:     (561) 544-8900
                                              Facsimile:      (561) 544-8999
                                              Attorneys for Defendants